IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

**MARY MCKINNELL BORDERS,**                                    Case No. 07-12450

     **Debtor**

### ORDER CONFIRMING DEBTOR'S PLAN

James E. Loris, Jr. and Larry Edge, Jr., attorneys for the Debtor, Mary McKinnell Borders
Jeffery J. Hartley, attorney for the Chapter 13 Trustee, John C. McAleer, III

     The Debtor's chapter 13 plan is before the Court for confirmation. The Trustee has objected to the plan based on the proposed commitment period. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Debtor's plan is confirmed.

### FACTS

     The Debtor filed a chapter 7 bankruptcy petition on August 30, 2007. The Debtor is married, but filed individually. Her husband is not a debtor in any bankruptcy case. The Debtor's case was converted to a chapter 13 on November 28, 2007. On February 7, 2008, the Debtor amended her Statement of Current Monthly Income, Disposable Income, and Commitment Period to claim a marital adjustment. On March 13, 2008, the Debtor amended her Schedules I and J to reflect her nondebtor husband's income and expenses. The Debtor's Statement of Current Monthly Income reports (on line 2) that she has no income and her nondebtor husband has gross wages in the amount of $4,184.67 and that this amount is almost

the total income her family receives.[1] The Debtor took a $1,200.00 marital adjustment on lines 13 and 19. After the marital adjustment was subtracted from the total family income, the annualized monthly income was less than the median family income; therefore, the Debtor reported a three year commitment period as per the instructions on the form B22C.

The Debtor's confirmation hearing was held on April 3, 2008. Due to objections by the Trustee regarding the plan, the hearing was continued until April 23, 2008.

At the April 23, 2008 hearing the Trustee objected to the Debtor's listed commitment period. According to the Debtor, her husband pays his own health insurance premiums, credit card bills, and other obligations that are not "household" expenses. Therefore, the Debtor deducted these amounts on lines 13 and 19. The Trustee contends, however, that within the parameters of determining the commitment period (not disposable income), the income the Debtor deducted must be included because it "benefits" the Debtor and the household. The Trustee argues that while these expenses are all paid solely by the nonfiling spouse and benefit the nonfiling spouse individually, they also benefit the Debtor because the nonfiling spouse is the primary "breadwinner" for the household, so keeping him healthy and his debts current effectually benefitted the Debtor's household. The Court took the matter under advisement.

## LAW

The Trustee's objection to the applicable commitment period is brought under 11 U.S.C. § 1325(b)(4)(A). The Trustee bears the initial burden of producing evidence that the Debtor is not including all income that is paid on a regular basis for household expenses. The burden then shifts to the Debtor to prove by a preponderance of the evidence that she has complied with §

---

[1] The total income reported on line 11 is $4,649.67. This sum includes the $465.00 Debtor lists on line 3 and her husband's $4,184.67 income.

1325(b)(4)(A).  *In re Barnes*, 378 B.R. 774, 777 (Bankr. D. S.C. 2007).  While there is not a clear answer to the Trustee's question of whether or not the Debtor may deduct her nonfiling spouse's individual expenses for determining the applicable commitment period, there is case law that provides guidance on the issue with which the Court agrees.

In *In re Grubbs*, a married debtor filed a chapter 13 bankruptcy individually and included her income as well as her husband's, but she took a marital adjustment on line 13 for the income of her nonfiling spouse that was not contributed regularly to household expenses.  2007 WL 4418146 (Bankr. E.D. Va. 2007).  After this deduction, the debtor determined the applicable commitment period to be three years.  The trustee objected on the basis that the debtor was required by §1325(b)(4)(A)(ii) to include her income and her spouse's, even if not filing jointly, and, therefore, should have a five year commitment period.  *Id.* at *2.  Section 1325(b)(4)(A)(ii) states that the applicable commitment period should not be "less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, ...."  However, the *Grubbs* court disagreed with this interpretation after examining the Code's definition of "current monthly income."

The Code defines "current monthly income" as the "average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)...." §101(10A)(A).  The court concluded that in a single filing case, like Ms. Borders', the debtor's current monthly income includes only the income received by the debtor.  *In re Grubbs*, at *2 (citing *In re Barnes*, 378 B.R. 774, 778 (Bankr. D. S.C. 2007); *In re Quarterman*, 342 B.R. 647, 650 (Bankr. M.D. Fla. 2006); 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007).  The portion of the nonfiling spouse's income that is contributed for household expenses is also included in the determination of the commitment period.  *Id.* at *3.

This reading renders the best interpretation of "current monthly income" so that the parenthetical in the definition is not superfluous. *Id.* In drafting the statute, Congress was surely aware that "[t]he additional income of a spouse is completely irrelevant if that spouse's income is not available to cover household expenses." *Id.* This is the case where only one spouse files for bankruptcy. To conclude otherwise would mean that a married debtor who files individually would be worse off than one who files jointly because the debtor would appear from his or her B22C to have money to pay into a plan that he or she really does not have because it belongs to a nonfiling spouse. *Id.*

The crux of the Trustee's argument is that the Debtor's nonfiling spouse's expenses benefit the household and, therefore, cannot be deducted as a marital adjustment for determining the applicable commitment period. This theory has been presented in the context of determining disposable income and has not been successful. In *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan. 2007), where a married debtor filed his bankruptcy case individually, he was allowed to take a marital adjustment for the nonfiling spouse's monthly payments for the family's house and car. Both the house and the car were titled in the nonfiling spouse's name. It was determined that even though the debtor benefitted from the payments because he lived in the house and probably drove the car, the nonfiling spouse was solely liable for the debts and they were deductible as a marital adjustment. *In re Shahan*, 367 B.R. at 738. While the determination of the marital adjustment for disposable income and the applicable commitment period is different, the logic is similar. If the income of a nonfiling spouse used to pay for a home and car that are obviously "household expenses" that benefit the debtor are deductible for determining disposable income, the Court concludes that the income of the Debtor's nonfiling spouse for his own health insurance and credit card bills should not be deductible for considering the applicable

commitment period. While these payments may ensure the primary breadwinner stays healthy and is able to continue providing for the Debtor, if he decides to stop paying for his insurance and individual debts and chooses to use his income for other purposes that have no connection or benefit to the Debtor, the Debtor has no control over the situation. While the Debtor may indirectly benefit from her nonfiling spouse's expenses, they are still individual expenses of a nondebtor and should not be considered regular payments for household expenses as dictated by line 13 of form B22C.

For these reasons, the Court finds that the Debtor has carried her burden and proved that she has complied with § 1325(b)(4)(A). The Debtor listed all of her and her nonfiling spouses income. After subtracting the portion of her nonfiling spouse's individual expenses, the amount was multiplied by 12 to determine her monthly income, and it was below the median family income, so her applicable commitment period is three years. This decision is supported by the plain meaning of the language of B22C form completed by the Debtor, as well as, the Code's definition of "current monthly income."

THEREFORE, the Debtor's Chapter 13 Plan is CONFIRMED.

Dated: April 30, 2008

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE